## Kelly *vs.* Fall Brook Coal Company.

One dealing with an agent is not bound to know the private instructions to the latter.    If the agent is in fact accustomed to make contracts of that nature for his principal, and this is known to the latter, that is sufficient to render the principal liable upon the agent's contracts.

In June, 1873, a contract was made between the parties by which the plaintiff agreed to carry coal for the defendant, from Watkins to some point east, that season, at regular prices, and the defendant agreed to load the plaintiff's boat in regular turn with its own.    On the 14th of August, after carrying two loads of coal, the plaintiff came to W. with his boat, for another load, his turn coming on the 16th.    He was obliged to wait for a load until September 3d.    *Held,* that the defendant, in failing to load the plaintiff's boat in its turn, broke its contract; and the plaintiff was entitled to damages, for such breach.

*Held, also,* that the plaintiff, being under a contract with the defendant for the season, was entitled to notice that the defendant would not perform the agreement, on its part; and that, in the absence of any such notice, the plain-

Kelly *v.* Fall Brook Coal Company.

tiff was justified in waiting for a load, and should be allowed, as damages the profits of one trip, which it was shown he could have made during the period of detention. That what he could have earned under the contract, during that time, was the proper measure of his damages.

*Held, further,* that the defendant had no right to claim that in measuring the damages, the referee should have considered, by way of reduction, the profits made by the plaintiff during the rest of the season, after the September trip.

Also *held,* that the plaintiff was entitled to *interest* upon the amount of damages recovered.

APPEAL, by the defendant, from a judgment entered upon the report of a referee.

The action was brought to recover damages for a breach of contract. The complaint alleged that about the 7th of June, 1873, the parties entered into an agreement by which the plaintiff agreed to carry coal for the defendant, that season, at regular prices, and the defendant agreed to load the plaintiff's boat and furnish a cargo from the defendant's office at Watkins, in the county of Schuyler, to some point east, in turn with the defendant's boats, and in that way give full cargoes and employment for the plaintiff's boat and its master and crew, during the said season. The breach alleged was, that the plaintiff's boat was not loaded in its turn, by the defendant, but was kept idle, and damages sustained thereby.

*Hurd & Fletcher,* for the appellant.

*Wm. Lounsbery,* for the respondent.

*By the Court,* LEARNED, J. The first objection is that the defendants are not proved to be a corporation. But they have attained the privilege of suing and being sued as a corporation of this state. (*Laws* 1864, *ch.* 192; *of* 1873, *ch.* 139.) And in the present action they are enjoying that privilege. I do not see any cause of complaint in this respect, on their part.

The next objection is as to the authority of Mr.

Kelly *v.* Fall Brook Coal Company.

Thomas. The president of the company testifies that Thomas had charge of receiving coal and distributing boats; that Thomas made the contracts for the company that were made personally; and that the president did not contract personally.

Now, although the president further says that Thomas had no authority to contract for boats, and had instructions not to contract without Mr. Magee's knowledge, yet the plaintiff was not bound to know the private instructions to Thomas. The very language, "instructions not to contract for boats without my (Mr. Magee's) knowledge," implies that with Mr. Magee's knowledge Thomas was to contract. And the plaintiff could not know whether Mr. Magee had or had not directed Thomas to contract with him. If Thomas was, in fact, accustomed to make the contracts, and this was known to the company, that is sufficient.

The next question is, whether there was a contract made.

This is a question of fact, and the judgment of the referee on the conflicting testimony ought to control. He saw and heard the witnesses.

Several questions as to the value of the use of the plaintiff's boat were objected to. The answers were material only on the question of damages. And the rule on that point adopted by the referee did not depend on these answers. They were immaterial, and did not affect the result.

The contract found by the referee to have been made is, that the plaintiff should carry coal for the defendants that season, at regular prices, and that they should load his boat in regular turn with their own. After he had carried two loads for them he was again at their place, on the 14th of August. His turn came the 16th. He was not loaded till September 3d. When loaded, he testifies that he told Mr. Thomas that he did not think there was much use of his coming back, and that

Thomas said that he did not know that he would load him again that fall. Thomas denies this. After the plaintiff had carried the load of September 3d he did not return to Watkins.

The referee has given him damages for the detention from August 16th to September 3d.

Assuming, then, that there was such a contract, as is found by the referee, it seems to be plain that the defendants broke it by failing to load the plaintiff in his turn. And he would, therefore, be entitled to damages. But the defendants insist that the plaintiff was wilfully idle, and did not seek other employment. It does not, however, appear by the evidence that the defendants distinctly and plainly gave the plaintiff to understand on the 16th of August that they would not perform their contract.

According to the plaintiff's testimony, he had some conversations with Thomas at different times in the interval between August 16th and September 3d, in regard to his being loaded. And from these conversations the plaintiff might have understood that he was not discharged from their employment. And assuming that he was under a contract with them for the season, he was entitled to be distinctly notified, by words or acts, that the contract was broken. The referee finds that the plaintiff was "kept waiting;" and there is evidence to support that finding.

The rule of damages which the referee adopted was to allow the plaintiff the profits of one trip; which it was known he could have made during this detention. During that time the plaintiff was waiting, in order to carry out the contract which he had made. And what he could have earned under the contract during that time seems to be a correct measure of his damages.

After the trip which began September 3d, both parties abandoned the contract. The plaintiff did not return, and he says that he notified the defendant that he should

not. And the defendants insisted that there was no contract. But the defendants claim that, in measuring the damages, the referee should have considered, by way of reduction, the profits made by the plaintiff during the rest of the season, after the September trip.

That does not seem to be just, and does not follow from the decisions on this subject. The plaintiff does not recover for the amount which he might have earned under his contract after September 3d.

He recovers only for the time when, by waiting in order to fulfil this contract, he was prevented from earning anything. The defendants ought not to have the advantage of his subsequent industry. For that same industry, if exercised during the nineteen days of delay, might have produced for the plaintiff still more profits.

It was proper to allow interest. (*Van Rensselaer* v. *Jewett*, 2 *N. Y.*, 135.)

The judgment should be affirmed.(*a*)

Judgment affirmed.

[THIRD DEPARTMENT, GENERAL TERM at Albany, January 5, 1875. *Learned, Boardman* and *James,* Justices.]

(*a*) *S. C.*, reported very briefly, 4 *Hun,* 261.